# Staunton

## City of Norfolk v. L. Snyder.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John N. Sebrell* and *Jonathan W. Old, Jr.,* for the plaintiff in error.

*Louis B. Fine,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

L. Snyder filed his application in the Corporation Court of the city of Norfolk, alleging that real property owned by him in that city, known as 600-610 Plume street, was erroneously assessed for taxation, by the land assessors at the general assessment of real estate in 1930, and asking that the assessment be reduced. The assessment of

this real estate was fixed by the assessors at $25,820 for the land and $2,000 for the buildings. The assessment so fixed was approved by the local board of equalization. The corporation court, after hearing the evidence, reduced the assessment on the land from $25,820 to $18,-000, and entered its order carrying the reduced assessment into effect.

The evidence is composed entirely of the testimony of men who qualify as experts on the value of real estate in Norfolk and the testimony of the assessors themselves, who are also experts in this field. The testimony of the assessors is confined to the value of the property in 1930, the time the general assessment was made, while the testimony of the witnesses who testified for the applicant, and who were employed by him, base their estimates of the value as of the latter part of the year 1931, a year after the assessments had been made.

The assessment was worked out and computed on a value of $165 per front foot and the uncontradicted evidence shows conclusively that the value placed on the property on the front foot basis and otherwise, bears a just and fair relation to the assessments which the assessors made of the adjoining and surrounding properties, some of which were assessed at $175 to $250 per front foot. The testimony for the city shows the value of applicant's property to have been, in 1930, from $165 to $200 per front foot, while the testimony of the witnesses for the applicant show it to have been approximately $75 per front foot.

The corporation court expressly discarded the evidence of the witnesses and assessed the property according to its own independent judgment as to values. The decision of the court follows: "I suppose when competent and reliable real estate men differ, as they do in this case, it is pretty safe for the court to form its own judgment about the value of this property. I think a fair assessment of this property would be $18,000 for the land and $2,000 for the buildings."

■ The Constitution of Virginia, section 169, provides that property, both real and personal, shall be assessed at its fair market value, and section 168 provides that all taxes shall be uniform upon the same class of property. The primary consideration, therefore, is to procure an assessment of property, (a) at its fair market value, and (b) one that will be uniform upon the same class.

■ This court has held that the fair market value of property is the price it will bring when offered for sale by one who desires but is not obliged to sell, and is bought by one who is under no necessity of having it. *Lehigh Portland Cement Co.* v. *Com.,* 146 Va. 146, 135 S. E. 669; *Seaboard Air Line Ry.* v. *Chamblin,* 108 Va. 42, 60 S. E. 727, 15 Ann. Cas. 825.

■ It has been recognized by this court that securing equality in the assessment of property has many difficulties and that no machinery has yet been devised by which these difficulties may be fully overcome. *Rixey's Ex'rs* v. *Com.,* 125 Va. 337, 99 S. E. 573, 101 S. E. 404; and in the *State Railroad Tax Cases,* 92 U. S. 575, 612, 23 L. Ed. 663, Justice Miller said: "Perfect equality and perfect uniformity of taxation as regards individuals or corporations or the different classes of property subject to taxation, is a dream unrealized."

■ In Virginia it is settled law that there is a clear presumption in favor of the assessment as made by the assessors and the burden is upon those who seek relief to show that the value as fixed is excessive or out of proportion to other like surrounding property. *Rixey's Ex'rs* v. *Com., supra; Union Tanning Co.* v. *Com.,* 123 Va. 610, 96 S. E. 780; *Pembroke Limestone Works* v. *Com.,* 139 Va. 270, 123 S. E. 334; *Thornhill Wagon Co.* v. *Com.,* 144 Va. 194, 131 S. E. 445.

■ There is so statute in Virginia providing a rule by which assessors should be guided in ascertaining the fair market value of property. It is common knowledge that different persons, equally well qualified, use different

methods in fixing a value on property. Some arrive at their conclusion from a personal inspection and view of the property and fix the value in the light of their experience in appraising the particular property or like property in the same surroundings for loans or sales, while others approach the question from technical engineering knowledge. It has been held in West Virginia that reproduction costs, with allowance for depreciation and age may be considered. *Central Realty Co.* v. *Board of Review, etc.,* 110 W. Va. 437, 158 S. E. 537.

The value of property is a matter of opinion and there must necessarily be left a wide room for the exercise of opinion, otherwise courts will be converted into assessing boards and in assuming to act as such, would assume the powers lodged elsewhere by the law-making branch of government. Judge Cooley says in Cooley on Taxation, section 1612: "Courts cannot substitute their judgment as to the valuation of property for the judgment of the duly constituted tax authorities."

■ Generally the question as to whether an applicant's property in any particular case has been assessed at more than its fair market value, or out of proportion to other like property, presents a question of fact to be decided by the assessors or the local board of equalization and the result fairly arrived at by them should not be disturbed by the court unless the applicant has carried the burden of showing clearly that the assessment is excessive or out of proportion to that of other like property.

In *Charleston & S. Bridge Co.* v. *Kanawha County Court,* 41 W. Va. 658, 24 S. E. 1002, 1005, the court said: "* * if assessments are to be based upon the opinions of individuals * * instead of being uniform and bearing equally upon property of the same character throughout the State, the assessments would be as shifting and variable as the opinions of men influenced oftentimes by local causes could possibly make them."

■ Conclusions of a board of commissioners will not

be disturbed unless it appears that there has been a manifest error in the manner of making the estimate, or that evidence which should be controlling has been disregarded. Cooley on Taxation, section 1618, note, p. 3235.

In the present case the most that can be said is that there is a difference of opinion among the witnesses as to the value of the applicant's property which ranges from estimates below to estimates above the value fixed by the assessors. This was held to be insufficient in the case of *Estell* v. *Hawkens,* 50 N. J. Law, 122, 11 Atl. 265.

In assessing property for taxation a very important consideration is uniformity, so that the tax burden may be justly distributed. To accomplish this desirable object, the law provides for the board of assessors, and the board of equalization, composed of five members. They having been appointed and selected by reason of their peculiar qualifications, their judgment on values and uniformity should not be disturbed unless it has been shown that they have disregarded controlling evidence.

In this case as in other cases of this kind there is no accurate standard by which the value may be determined and necessarily the evidence must be based upon opinion, which with reasonable and qualified men does differ, yet so long as the assessment comes within the range of a reasonable difference of opinion, as it does here, when considered in the light of the presumption in its favor, it cannot be said that the assessment is erroneous.

The court is of the opinion that the judgment of the lower court should be reversed and final judgment here entered in favor of the city of Norfolk.

*Reversed.*

CAMPBELL, C. J., dissenting.