# Staunton

CITY OF ROANOKE v. C. R. WILLIAMS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Robert C. Jackson,* for the plaintiff in error.

*Dillard, Moomaw & Dillard,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

This is a proceeding brought for the correction of an assessment for taxation of certain real estate in the city of Roanoke. That assessment, it is claimed, was erroneous and excessive.

Mr. C. R. Williams is the owner of the real estate in question. It is a lot on the southeast corner of Church avenue and Henry street, fronting fifty feet on Church avenue and extending back between parallel lines ninety-five feet to an alley. On it is a building in which are six small shops. The board of assessors valued this property for the purposes of taxation at $43,000.00, apportioned thus: land, $35,000.00; building, $8,000.00. These figures were approved by the board of equalization. The trial court reduced this assessment to $38,500.00. It valued the land at $31,500.00 and the building at $7,000.00.

For Mr. Williams three witnesses have testified. Mr. M. C. Franklin, a realtor, valued the building at $37,500.00, and the land at $40,000.00, thus making a total of $77,-500.00, but was further of opinion that there should have been charged off against the building for depreciation twenty or twenty-five per cent. He knew of no sales of land in this block fronting on Church avenue, but said that a corner lot, just across Henry street, fronting on Church avenue, whose dimensions were the same as those of the lot in judgment, had been sold for $101,000.00.

Mr. J. W. Boswell valued the land at $60,000.00 and the

building at $15,000.00. About nine years ago it sold for $75,000.00.

Mr. E. G. Upson thought that the building was worth $15,000.00, and the land $62,500.00.

Mr. M. F. Cleaton, one of the assessors, in justifying the assessment, called attention to the fact that it is one square south of Campbell avenue and Henry street, probably the second most valuable corner in the city; that it is one square west of Jefferson street and Church avenue, probably the third most valuable corner in the city, and that by it run nearly all of the bus lines operated through Roanoke. Two or three years ago he offered to buy it for $110,000.00. Mr. Williams priced this property at $120,-000.00, but was willing to take $110,000.00, if his brother, then interested, would consent. We do not know why the sale fell through. He undertook to list for sale other Church avenue lots in this block, but was unsuccessful except in one instance. A Mr. Bissee, who owned a twenty-five-foot interior lot, said that he would consider a $50,000.00 offer. The witness was in touch with Mr. Williams and his tenants and from information so obtained, testified that the monthly rent roll was from $700.00 to $750.00.

T. W. Fugate thought that $100,000.00 was a fair market value. He owns or controls a twenty-five-foot adjoining lot and said that he would not consider a $50,000.00 offer.

J. T. Bamby believed $90,000.00 to be a conservative figure.

Oscar A. Wall said that its worth was from $100,000.00 to $110,000.00 and that Mr. Williams had listed it with him for sale at $125,000.00.

By agreement the evidence of Mr. Cleaton, given in the cases of *Ritchie* v. *City of Roanoke* and *Peerless Hardware Co.* v. *City of Roanoke,* is to be read. It tells us how values were reached and of work done by the Manufacturers' Appraisal Corporation. That phase of this case was before us in *City of Roanoke* v. *Gibson, et al., ante* page 342, 170 S. E. 723, this day decided. Little new information is

given, although, perhaps, it appears that less weight was given to the work of the Appraisal Corporation than was indicated by the evidence, in the *Gibson Case*.

After the testimony had been concluded this statement showing rents collected from January 1 to July 1, 1931, was filed:

"Rents received _____$3,270.00
Less collection cost, five per cent_____$163.50
Repairs _____ 31.00
Insurance in the amount of $7,500.00
    annual rent at $1.55 for six months  56.25
Taxes six months, present assessment 537.50
                                    ———————  788.25
                                         ———————
    Net receipts _____$2,481.75"

It was also said that present conditions made it appear that a further reduction would follow.

The estimates of witnesses as to the value of this property vary, as might have been expected, for after all they are but estimates, and mathematical exactness is an impossible standard. The assessors and the board of equalization thought that $86,000.00 was a fair estimate and reduced it by half. The weight of evidence tends to support them. The trial court thought it was with the petitioner.

"There is a clear presumption in favor of the assessment made by the assessors." *City of Norfolk* v. *Snyder, ante,* page 288, 170 S. E. 721, this day decided.

Assessments should not exceed market value, but estimates as to value are, relatively speaking, of minor moment. It. is uniformity in assessments which ratably and fairly apportion the burden of taxation and from that rule there must be no material departure. When it plainly appears that some rule of uniformity has been departed from, relief should be given, but this must plainly appear. Sporadic inequalities in the assessment of other lots will

not suffice. *A* cannot complain because *B*'s lot is undervalued. If we concede, as plaintiff contends, that the assessment of the corner lot across Henry street is out of line with that placed upon his own, that is not enough. Measured by this test the evidence does not support the judgment.

This case is in a general way governed by principles set out in *City of Norfolk* v. *Snyder, supra,* and *City of Roanoke* v. *Gibson, et al., supra.* It is not necessary that we should again cite authorities there relied upon.

This case is reversed, and the assessment set aside by the trial court must be reinstated. It is so ordered.

*Reversed.*