Present:  Koontz, Kinser, Goodwyn, Millette, and Mims, JJ., and
Russell and Lacy, S.JJ.

COUNTY OF ALBEMARLE

                                          OPINION BY
v.  Record No. 091590          JUSTICE S. BERNARD GOODWYN
                                        September 16, 2010
KESWICK CLUB, L.P.

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                     James A. Luke, Judge Designate

     In this appeal, a county challenges the circuit court's

reduction of an assessment, for the 2003 and 2004 tax years, of

the fair market value of real estate owned by a taxpayer.  We

consider whether the circuit court erred in finding the

county's assessment erroneous and reducing the assessment.

     This case was previously remanded to the Circuit Court of

Albemarle County for reconsideration of an assessment made by

the County of Albemarle (the County) of the fair market value

of the Keswick Club.  Keswick Club, L.P. v. County of

Albemarle, 273 Va. 128, 639 S.E.2d 243 (2007).  This Court

instructed the circuit court, on remand, to apply the proper,

less stringent standard of review, applicable under the facts

of this particular case, in determining whether the County's

assessment was erroneous.  Id. at 141, 639 S.E.2d at 250.

                              Facts

     In 2003, Keswick Club, L.P. (the taxpayer), the owner of

Keswick Club, an approximately 153-acre private recreational

club in Albemarle County, challenged a judgment upholding the County's assessment of the fair market value of the Keswick Club real property for the 2003 and 2004 tax years. The County issued a notice of reassessment to the taxpayer that valued Keswick Club's real estate at a fair market value of $12,771,500.[1] The taxpayer disputed the assessment value and filed an application in the circuit court, pursuant to Code § 58.1-3984, to correct the erroneous assessment.

At the bench trial, David J. Sangree was qualified, without objection, as an expert real estate appraiser and hospitality consultant and testified on behalf of the taxpayer. He was licensed in Ohio and had a temporary appraisal license in Virginia. Sangree stated that he had conducted a recent appraisal of the Keswick Club real estate in preparation for the tax appeal. He further stated that the income approach to valuation was the most appropriate because a potential buyer of a golf course looks primarily at its profitability. Sangree also conducted an appraisal using the sales comparison approach and included in his appraisal purportedly representative sales of golf courses in Virginia and South Carolina, as well as the 2002 sale of the Keswick Club. Using both valuation approaches, Sangree valued the property at $2.9 million.

---

[1] The 2003 notice of reassessment stated that the previous assessment of the property was $11,318,900.

Sangree did not use the cost approach, stating that it was more relevant for a proposed property or a new construction property.

The county assessor, Bruce M. Woodzell, testified that he utilized the cost approach in assessing the value of the property because it rendered the "most accurate appraisal of the property" and is "appropriate when you have a special-use property" such as a golf course. Woodzell stated that he rejected the income approach because he had not received any income statements or other financial information from the taxpayer. However, he had not requested such information. Woodzell also stated that he could not develop an appraisal based on the sales approach because there was only one comparable sale in Albemarle County.

Ivo H. Romenesko, a licensed appraiser, also testified for the County. He stated that he did not use the income approach because projecting future profits would require an inordinate amount of speculation since Keswick Club had been operating at a loss. Romenesko used both the sales and cost approaches to evaluate the property. Using the cost approach, Romenesko valued the property at $12,950,000. Using the sales approach, Romenesko valued the property at $12 million. His final appraised value for the property was $12.5 million.

At the conclusion of the trial, the circuit court found that the taxpayer failed to prove that the County "committed manifest error in its evaluation," and affirmed the County's assessment. The taxpayer appealed to this Court. We held that the circuit court had erred in upholding the County's assessment because the assessment was not entitled to a presumption of correctness, and therefore the taxpayer was not required to establish that, in making its assessment, the County committed "manifest error." Keswick Club, 273 Va. at 141, 639 S.E.2d at 250. Rather, to prevail, the taxpayer was required only to show that the assessment was erroneous. Id. Accordingly, we remanded the case for the circuit court to evaluate the County's assessment, applying the proper and less stringent standard of review applicable under the facts of this case. Id.

On remand, over the objection of the taxpayer, the circuit court allowed the County to present additional evidence. Romenesko testified that he had analyzed the fair market value of the property using the income approach and found that using that approach resulted in a fair market value of $9.9 million. However, he discounted the accuracy of the income approach, in this instance, stating that it required considerable speculation. Therefore, he discarded the valuation he found using the income approach, and testified that he still believed

4

that his previous appraisal valuing the property at $12.5 million was accurate because the sales and cost valuation approaches were better measures of value.

In response, the taxpayer sought to introduce additional testimony from Sangree, critiquing the income approach valuation done by Romenesko. The County objected to Sangree's testimony because Sangree did not hold a Virginia real estate appraiser license, his previous Virginia temporary appraiser license having expired. The taxpayer argued that Sangree was solely testifying in rebuttal to Romenesko's testimony about the appraisal process. The circuit court overruled the County's objection on the basis that Sangree had not done a new appraisal. Further, the court stated that because it was a continuing proceeding and Sangree was fully qualified and accepted without objection as an expert appraiser earlier in the proceeding, the court could allow Sangree to testify pursuant to Code § 54.1-2010(B).

Sangree testified that the methodology used by Romenesko in applying the income approach to value the property was flawed. Sangree also pointed out various mathematical errors and errors in the figures Romenesko used to calculate both the possible sale price and potential income of the property. Also, two additional witnesses testified concerning the discrepancy between the assumptions made by Romenesko in doing

5

his income approach analysis and how the Keswick Club property was actually operated or could be operated.

The circuit court issued its ruling by way of a letter opinion. The circuit court stated that "in effect, the Supreme Court stated that based on its review of the record, the [County's] assessment was erroneous, on the ground that the County used an improper methodology." It also stated that the County, on remand, had reasserted its previous value and that the taxpayer also reaffirmed that it was relying upon the same appraisal as asserted at trial. "Thus, the evidence before the Court at present is substantially similar to the evidence before the Court at trial." The circuit court stated that it had analyzed the evidence presented to it and "the Court, in applying the less stringent standard of review set forth by the Supreme Court, concludes that Keswick has proven that the County's assessment was erroneous and sets aside the assessment."

The circuit court also found that neither the County nor the taxpayer had arrived at a correct fair market value figure for the property, and concluded that the correct fair market value of the property was somewhere between the parties' valuations. The circuit court set the value of the property at $7 million, a value figure that had been testified to by Michael Pownall, Keswick Club's general manager, in the initial

trial.  That valuation amount was also admitted into evidence in a letter from Pownall to the Board of Equalization.  The County appeals.

## Analysis

The County argues that the circuit court erred in stating that this Court, in its prior opinion, found the County's assessment erroneous, when this Court only addressed the County's assessment methods.  The County also asserts that the circuit court erred in finding that the assessment was erroneous, in reducing the assessment to $7 million, and in allowing Sangree's testimony on remand.

Code § 58.1-3984(A) provides that a taxpayer seeking to set aside an assessment as erroneous has the burden of establishing that the property was "valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal."  Further, a taxing authority's assessment of a property's fair market value is entitled to a presumption of correctness which can be overcome by showing that the taxing authority committed manifest error.  Board of Supervisors v. HCA Health Servs., 260 Va. 317, 329, 535 S.E.2d 163, 169 (2000).  However, if the taxpayer establishes that the taxing authority has committed manifest error, the assessment is not entitled to a presumption of correctness and the taxpayer is

7

required to show only that the assessment was erroneous. See id. at 330, 535 S.E.2d at 170.

In our prior opinion regarding this matter, we held that the County's assessment was not entitled to a presumption of validity and that the taxpayer was only required to show that the County's assessment was erroneous, "not that the county committed manifest error or disregarded controlling evidence in making its assessment." Keswick, 273 Va. at 140-41, 639 S.E.2d at 250. Under those circumstances, the taxpayer can show an assessment is erroneous if, as set out in Code § 58.1-3984(A), the taxpayer establishes that the property is assessed at more than its fair market value. We concluded that the circuit court applied an incorrect standard of review. Id. at 141, 639 S.E.2d at 250. The case was remanded to allow the circuit court to apply the correct standard of review in determining whether the County's assessment was erroneous. Id. That is the posture in which this case was presented to the circuit court following our remand.

While the circuit court erred in stating that this Court had already determined that the County's assessment was erroneous, the circuit court nevertheless applied the correct standard on remand when considering whether the County's assessment was erroneous. The circuit court, as recited in its opinion letter, recognized that to prevail in this case, that

8

is, to establish that the assessment was erroneous, the taxpayer had the burden of proof "to show that the property in question is valued at more than its fair market value" pursuant to Code § 58.1-3984(A). The circuit court specifically noted that the taxpayer presented "evidence as to what it believes is the fair market value of the property." The circuit court concluded that this evidence met the taxpayer's proof burden. Therefore, the determinative assignment of error argued by the County is whether in applying the less stringent standard of review mandated by this Court to be used on remand, the circuit court erred in finding that the assessment was erroneous and reducing the assessment to $7 million.

The County argues that the circuit court should have accepted the County's assessment, which was supported by Romenesko's appraisal. The taxpayer asserts that the circuit court was correct in finding that the County's assessment was erroneous. The taxpayer argues that the circuit court, as the fact finder, was entitled not to accept the expert testimony presented to it and that the circuit court's determination of fair market value is supported by evidence presented at trial.

A taxpayer seeking relief from an allegedly erroneous assessment has the burden to show that the assessment exceeds fair market value. Code § 58.1-3984; see Shoosmith Bros. v. County of Chesterfield, 268 Va. 241, 245, 601 S.E.2d 641, 643

(2004); Board of Supervisors v. HCA Health Servs., 260 Va. 317, 329-30, 535 S.E.2d 163, 169-70 (2000); Tidewater Psychiatric Inst. v. City of Virginia Beach, 256 Va. 136, 140-41, 501 S.E.2d 761, 763 (1998).  In this case, the taxpayer was required to show that the County's assessment exceeded fair market value.

The parties' expert valuations differed greatly.  In cases where the circuit court is presented with such conflicting testimony, we "will defer to the circuit court's judgment of the weight and credibility to be given [the witness'] testimony."  HCA Health Servs., 260 Va. at 332, 535 S.E.2d at 171.  Keswick's evidence concerning the value of the property was sufficient to demonstrate that the County's assessment exceeded fair market value.  Accordingly, we hold that there is evidence to support the circuit court's finding that the County committed error in its assessment.  See Arlington County Board v. Ginsberg, 228 Va. 633, 641, 325 S.E.2d 348, 352 (1985).  Further, because the circuit court on remand properly determined that the assessment was erroneous, it was empowered to set the assessment pursuant to Code § 58.1-3987.

Code § 58.1-3987 states that a circuit court, when considering the reduction or increase of an assessment, has "all the powers and duties of the authority which made the assessment complained of, as of the time when such assessment

10

was made, and all the powers and duties conferred by law upon such authority between the time such assessment was made and the time such application is heard." We have interpreted this Code section to mean that a circuit court may fix the assessment in accordance with the evidence, as it retains all the powers of the taxing authority. Ginsberg, 228 Va. at 640, 325 S.E.2d at 352.

After a circuit court has found an assessment erroneous, it is "not bound by the values argued by the parties or those fixed by witnesses." Id. at 643, 325 S.E.2d at 353. Instead, the circuit court may, pursuant to Code § 58.1-3987, "weigh the evidence and establish a value accordingly" and where the circuit court has "selected a value supported by the evidence, it has acted within the statutory grant of authority." Id. at 643, 325 S.E.2d at 354. We then review the circuit court's factual finding for clear error and we will not overturn the circuit court's ruling unless it was plainly wrong or without evidence to support it. Board of Supervisors v. Donatelli & Klein, Inc., 228 Va. 620, 627-28, 325 S.E.2d 342, 345 (1985).

The circuit court reviewed the evidence presented at trial and allowed the parties to present new evidence on remand. Instead of relying on the County's expert testimony, or the taxpayer's rebuttal, the circuit court correctly stated that in accordance with Code § 58.1-3987, it was empowered to "arrive

11

at its own assessment value of the property." The circuit court stated that it considered and relied on the evidence presented to it in ruling that $7 million was the proper assessment of the fair market value of the property. We hold that the circuit court's ruling as to the proper value for the taxpayer's property is not erroneous because it is not plainly wrong or without evidence to support it.

The County also argues that the circuit court erred in allowing the admission of Sangree's testimony on remand. The County argues that Sangree should not have been permitted to testify because at that time he was not licensed by the Commonwealth as a real estate appraiser as required under Code § 54.1-2011. The County also argues that even if Sangree's testimony was admissible, it was inherently unreliable. The taxpayer argues that the circuit court, without objection, previously in the same proceeding qualified Sangree as an expert appraiser and accepted his expert testimony, and under Code § 54.1-2010(B), the circuit court retains the ability to allow that person to provide additional testimony. In addition, the taxpayer argues that Sangree's testimony on remand was not an appraisal since he did not conduct an analysis of the property, and thus Code § 54.1-2011 would not prevent Sangree from providing such testimony.

The purpose of Sangree's testimony on remand was to challenge Romenesko's testimony on remand. On remand, Romenesko testified that the income approach resulted in an appraised value for the Keswick Club real property of $9.9 million. Sangree's testimony on remand was critical of Romenesko's assumptions and the methodology he used in appraising the property using the income approach. Two other witnesses also testified concerning the accuracy of the assumptions Romenesko made in using the income approach. However, Romenesko stated that as a result of the inappropriateness of using the income approach in this instance, he would discard the result he found using the income approach in appraising the property, and he did so. Romenesko testified that he still believed his initial appraisal was correct, and he reasserted the correctness of his previous valuation of $12.5 million, which was made at the initial trial.

The circuit court relied upon the appraisals presented to it to determine whether the County's assessment was erroneous. Romenesko did not change his appraisal on remand. Therefore, it is clear that Sangree's testimony on remand could not have affected the result. Thus, to the extent the circuit court erred in admitting Sangree's testimony into evidence, such error was harmless.

## Conclusion

Accordingly, for the reasons stated, we will affirm the circuit court's ruling.

*Affirmed.*

JUSTICE KINSER, dissenting.

The County of Albemarle (the County) asserts in assignment of error number one that "[t]he trial court erred in concluding that this Court had already found the County's assessment erroneous when this Court had faulted only the manner in which the assessment method was chosen."  With regard to this issue, the majority holds that, despite "err[ing] in stating that this Court had already determined that the County's assessment was erroneous, the circuit court nevertheless applied the correct standard on remand" from Keswick Club, L.P. v. County of Albemarle (Keswick I), 273 Va. 128, 639 S.E.2d 243 (2007).  I do not agree and conclude instead that the circuit court failed to determine, using the less stringent standard of review, whether Keswick Club, L.P. (Keswick Club) proved that the assessed value of its real property exceeded the property's fair market value.  Therefore, I respectfully dissent.

Before addressing our holding in Keswick I and the circuit court's decision in this case, I must reiterate some well-established principles.  The Constitution of Virginia commands that "[a]ll assessments of real estate . . . shall be at their

14

fair market value."  Va. Const. art. X, § 2.  "A taxing authority's assessment is presumed to be correct, and a taxpayer has the burden to rebut that presumption by establishing that the real property in question is assessed at more than fair market value or that the assessment is not uniform in its application."  West Creek Assocs., LLC v. County of Goochland, 276 Va. 393, 409, 665 S.E.2d 834, 842-43 (2008) (citing Code § 58.1-3984(A)) ("[E]ven if the assessor is unable to come forward with evidence to prove the correctness of the assessment[,] this does not impeach it since the taxpayer has the burden of proving the assessment erroneous." (internal quotation marks omitted)).  To rebut the presumption of correctness, "a taxpayer must show by a clear preponderance of the evidence that the taxing authority committed manifest error or totally disregarded controlling evidence in making the assessment."  West Creek, 276 Va. at 409, 665 S.E.2d at 843; accord Tidewater Psychiatric Inst., Inc. v. City of Virginia Beach, 256 Va. 136, 140-41, 501 S.E.2d 761, 763 (1998).

A taxpayer may demonstrate manifest error by proving that the taxing authority employed an improper methodology in arriving at a property's assessed value or by establishing "a significant disparity between fair market value and assessed value . . . 'so long as the assessment [does not] come[] within the range of a reasonable difference of opinion, . . . when

considered in light of the presumption in its favor.'" West Creek, 276 Va. at 414, 655 S.E.2d at 845 (quoting City of Norfolk v. Synder, 161 Va. 288, 293, 170 S.E. 721, 723 (1933)). When the taxpayer proves, as Keswick Club did in this case, see Keswick I, 273 Va. at 137, 139-40, 639 S.E.2d at 248-50, use of an improper methodology by establishing that the taxing authority failed to "consider[] and properly reject[] other methods of calculating" a property's fair market value, Tidewater, 256 Va. at 142, 501 S.E.2d at 764; accord Board of Supervisors v. HCA Health Servs. of Virginia, Inc., 260 Va. 317, 330, 535 S.E.2d 163, 169-70 (2000), the presumption of validity is rebutted. Keswick I, 273 Va. at 140-41, 639 S.E.2d at 250; see HCA Health Servs., 260 Va. at 330, 535 S.E.2d at 170. Then, the taxpayer needs to prove only that the assessed value is erroneous, not "manifest[ly]" so, to be afforded relief from an erroneous tax assessment. Keswick I, 273 Va. at 140-41, 639 S.E.2d at 250; see Code § 58.1-3984(A); HCA Health Servs., 260 Va. at 330, 535 S.E.2d at 170.

In Keswick I, the issue was "whether the [C]ounty failed to properly consider the income and sales approaches to valuation before basing its assessment solely on the cost approach." Keswick I, 273 Va. at 132, 140, 639 S.E.2d at 244, 250 (emphasis added). This Court held that the County's "categorical application of the cost approach to the valuation

16

of all golf courses resulted in a failure by the [C]ounty to consider and properly reject the income and sales approaches before solely utilizing the cost approach in assessing the fair market value" of Keswick Club's real property and, therefore, the County's 2003 and 2004 assessments were "not entitled to a presumption of validity."  Id. at 140, 639 S.E.2d at 250.  In Keswick I, we did not decide whether the County assessed Keswick Club's real property at more than its fair market value, but only that the County's refusal to consider and properly reject certain valuation methods rendered its assessed value of the property no longer presumptively correct. Accordingly, the Court remanded the case "so that the circuit court [could] apply the proper and less stringent standard of review," meaning the taxpayer only had "to show that the [C]ounty's assessment was erroneous, not that the [C]ounty committed manifest error or disregarded controlling evidence in making its assessment."  Id. at 141, 639 S.E.2d at 250.

Yet, as the majority acknowledges, the circuit court mistakenly interpreted Keswick I's holding.  After summarizing the controlling law, the circuit court stated that Keswick Club "seeks to show that the assessment was erroneous by proving that the County used an improper methodology in setting the assessment value."  In a footnote, the court presumed that the "methods of proving manifest error would also satisfy the

17

erroneousness standard." The circuit court next quoted this Court's holding in Keswick I, i.e., that the County had failed " 'to consider and properly reject the income and sales approaches before solely utilizing the cost approach,' " Keswick I, 273 Va. at 140, 639 S.E.2d at 250, and then concluded that this Court, in Keswick I, held that "the [County's] assessment was erroneous, on the ground that the County used an improper methodology." (Emphasis omitted.)

After drawing that conclusion about the decision in Keswick I, the circuit court summarized the evidence from the initial hearing as well the evidence presented after this Court's remand of the case. The circuit court stated:

> [A]fter the remand and over Keswick [Club's] objection, the [c]ourt gave the parties an opportunity to produce additional evidence. The only evidence the County presented at this time was the testimony of Ivo Romenesko. The County failed to show consideration and proper rejection of the income and sales approaches, instead reasserting its previous value, which was based on the cost approach. Keswick [Club] again presented evidence through Mr. Sangree, who reached the same appraisal value as he did at trial. Thus, the evidence before the [c]ourt at present is substantially similar to the evidence before the [c]ourt at trial.

The circuit court then held, "[b]ased on all the evidence presented at trial and after remand," and "applying the less stringent standard of review set forth by the Supreme Court, . . . that Keswick [Club] ha[d] proven that the County's

18

assessment was erroneous." This conclusion, read in the context of its prior discussion and mistaken understanding of the Keswick I decision, demonstrates that the circuit court concluded that the County once again "failed to show consideration and proper rejection of the income and sales approaches" and, for that reason, held the assessment erroneous. But, the issue on remand was not whether the County had used an improper methodology when it failed to consider and properly reject the sales and income approaches before assessing the fair market value of Keswick Club's real property by using only the cost approach. We decided that issue in Keswick I. 273 Va. at 140, 639 S.E.2d at 250. In doing so, we did not, however, determine whether the County's assessment was erroneous, but only that it no longer was entitled to the presumption of validity. Because we did not decide that issue, we remanded the case to the circuit court to review the facts under the less stringent standard of review. Id. But, the circuit court apparently believed that rebutting the presumption of validity by showing a failure to consider and properly reject certain valuation methods was ipso facto proof of an erroneous assessment.

I recognize that, after it concluded the County's assessment was erroneous, the circuit court then found that "neither the County nor Keswick [Club had] arrived at a correct

figure." At that point in its analysis, however, the circuit court, having decided the County's assessment was erroneous, was setting the assessed value of Keswick Club's real property. See Code § 58.1-3987; HCA Health Servs., 260 Va. at 329, 535 S.E.2d at 169 (stating that "[o]nce a trial court finds that a taxing authority committed manifest error in determining an assessment, the court is authorized to correct the assessment based on the evidence"). It had before it the testimony of the County's expert witness, Ivo H. Romenesko, and that of David J. Sangree, the expert real estate appraiser who testified for Keswick Club. As the majority notes, the circuit court rejected both experts' testimony and set the assessed value based on information furnished by an employee of Keswick Club to the Board of Equalization. Because the circuit court expressly rejected the evidence presented by Keswick Club, I cannot accept the majority's conclusion that "Keswick [Club's] evidence concerning the value of the property was sufficient to demonstrate that the County's assessment exceeded fair market value."

Furthermore, the majority's view that the circuit court both misunderstood Keswick I's holding and properly evaluated the evidence under the less stringent standard of review does not square with the "mandate rule," a principle requiring a trial court to follow the decision and mandate from an

20

appellate court.  See Powell v. Commonwealth, 267 Va. 107, 127, 590 S.E.2d 537, 549 (2004).  The circuit court could not conclude that this Court already had held the assessment erroneous but nevertheless proceed to decide whether the County's assessment exceeded fair market value and was therefore erroneous without flouting what it perceived to be this Court's mandate in Keswick I.  Cf. id. at 127-28, 590 S.E.2d at 549-50 (" 'A trial court has no discretion to disregard [a] lawful mandate.' ") (alteration in original) (quoting Rowe v. Rowe, 33 Va. App. 250, 257-58, 532 S.E.2d 908, 912 (2000)).  I am unwilling to ascribe such action to the circuit court.  Because the circuit court believed that this Court already had held the County's assessment to be erroneous, it necessarily also believed itself bound by judicial duty to rule accordingly.  See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939) (noting the "indisputab[ility]" of the "general proposition" that lower courts are "bound to carry the mandate of the upper court into execution and [cannot] consider the questions which the mandate laid to rest").  Therefore, the circuit court cannot be presumed to have analyzed the evidence under the less stringent standard of review to determine if the assessment exceeded the fair market value of Keswick Club's real property.

For these reasons, I respectfully dissent.  I would reverse the circuit court's judgment and remand for further proceedings in accordance with the holding in Keswick I.[**]

---

[**] In light of my view, I do not need to address the County's remaining assignments of error.