## CIRCUIT COURT OF LOUDOUN COUNTY

B.O.B. Title XXVI, Inc.

v.

Loudoun County
Board of Supervisors et al.

April 1, 1996

Case Nos. (Law) 15146 and 16055

BY JUDGE THOMAS D. HORNE

The instant cases came to be heard upon the petitions of B.O.B. Title to correct alleged erroneous real estate assessments by the County of Loudoun for the tax years 1990, 1991, 1992, 1993, and 1994. § 58.1-3984, Code of Virginia. Based upon a review of the evidence in these cases, the Court concludes that the taxpayer has failed to rebut the presumption of the validity to be accorded the assessments and that the petitions should be dismissed.

B.O.B. Title is the owner of approximately 89 acres of land located on Route 607 near the Dulles International Airport in eastern Loudoun County, Virginia. The property, known as the Ashburn Business Park, is zoned PD-IP, Planned Development — Industrial Park. This zoning would permit the use of the property, either by right or by special exception, for such activities as the following: research and development; transhipment and warehousing of goods; communications and transmissions, and commercial offices. The parcel is divided into 17 individual lots ranging in size from 96,268 square feet to 453,024 square feet. Accordingly, each lot is to be assessed separately and valued as a separate entity according to its highest and best use. See, § 58.1-3285, Code of Virginia.

As of January 1, 1990, significant site work remained to be completed in connection with the subdivision and development of the site as an industrial park. This included storm drain structures, water and sewer lines, paving, and landscaping. By January 1, 1991, the storm drains, water and sewer lines, and most of the interior road work had been completed. The appraisals received into evidence contain various photographic

views of the site. In the aggregate, these bonded public infrastructure improvements totaled $3,300,800.00. By January 1, 1991, approximately $354,030.00 worth of bonded public improvements remained to be completed.

In evaluating the petitions, the Court is to be guided by well-defined rules governing the judicial review of assessments.

Petitioner contends that the property in question has been valued at other than its fair market value. § 58.1-3984, Code of Virginia. "Fair market value" is defined as, "the price property will bring when offered for sale by a seller who desires but is not obligated to buy and bought by a buyer who is under no necessity of purchasing." *Board of Supervisors v. Telecommunications Industries*, 246 Va. 472, 476 (1993). The assessment is entitled to a presumption of correctness, and it is the taxpayer who has the burden, "to show either that its property is assessed at more than the fair market value or the assessment is not uniform in its application." *Id.* at 475 (citations omitted). In order to rebut the clear presumption of validity, the taxpayer must demonstrate manifest error or a total disregard of controlling evidence in making the assessment. *Id.* (citations omitted). Trial courts are cautioned that they "should be reluctant, within reasonable bounds, to change assessors' judgments because courts are not duly constituted tax authorities." *Id.* (citations omitted).

The court can find no fault with the mass appraisal technique utilized in valuing the subject property. Despite a failing market, sufficient comparable sales existed from which to determine a benchmark value to which appropriate adjustments could be made in determining fair market value for each of the individual lots. The Court cannot conclude that in assessing the subject parcels for the relevant tax years, the County committed manifest error or disregarded controlling evidence.

Valuation techniques which rely upon speculation and conjecture have been rejected by the Supreme Court of Virginia. *Fruit Growers Express Co. v. City of Alexandria*, 216 Va. 602 (1976). To assume, as petitioner's experts might suggest, that, for purposes of valuation, the subject parcels should be considered as a collective whole, to be finished and disposed of over a selected period of time, involves not only conjecture, but contravenes the statutory mandate that each lot is to be valued individually. Thus, while a discounted cash flow analysis may be an accepted method to be utilized in the making of investment or lending decisions, it cannot serve as a basis for impeachment of the tax assessments in these cases.

130

Accordingly, the applications of B.O.B. Title XXVI are denied and the Petitions dismissed.